Slip Op. 25-50

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **PAY LESS HERE, LLC,** | |
|         Plaintiff, | |
| v. | |
| **U.S. INTERNATIONAL TRADE COMMISSION,** | |
|         Defendant, | |
| and | |
| **BROOKLYN BEDDING LLC; CARPENTER CO.; CORSICANA MATTRESS COMPANY; FXI, INC.; KOLCRAFT ENTERPRISES, INC.; LEGGETT & PLATT, INCORPORATED; SERTA SIMMONS BEDDING, LLC; SOUTHERLAND, INC.; TEMPUR SEALY INTERNATIONAL; FUTURE FOAM, INC.; INTERNATIONAL BROTHERHOOD OF TEAMSTERS; AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,** | Before: Timothy M. Reif, Judge<br><br>Court No. 24-00152 |
|         Defendant-Intervenors. | |

## OPINION

[Granting defendant's motion to dismiss for lack of subject matter jurisdiction.]

Dated: April 22, 2025

Alex Schaefer and Weronika Bukowski, Crowell & Moring LLP, of Washington, D.C., argued for plaintiff Pay Less Here, LLC.

Cayla Danielle Ebert DeJaco, Attorney, Office of the General Counsel, and Andrea C. Casson, Assistant General Counsel for Litigation, of Washington, D.C., argued for defendant U.S. International Trade Commission. With them on the brief was Dominic Bianchi, General Counsel.

Mary Jane Alves, Cassidy Levy Kent (USA) LLP, of Washington, D.C., argued for defendant-intervenors Brooklyn Bedding LLC; Carpenter Co.; Corsicana Mattress Company; FXI, Inc.; Kolcraft Enterprises, Inc.; Leggett & Platt, Incorporated; Serta Simmons Bedding, LLC; Southerland, Inc.; Tempur Sealy International; Future Foam, Inc.; International Brotherhood of Teamsters; and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO.

      Reif, Judge: The issue before the court concerns the statutory standing requirements for a plaintiff contesting a determination of the U.S. International Trade Commission (the "Commission" or "defendant"). Plaintiff Pay Less Here, LLC ("plaintiff") brings the instant action to challenge the Commission's final affirmative determination of critical circumstances. Compl. ¶ 2, ECF No. 6. Defendant has filed a motion to dismiss for lack of subject matter jurisdiction, alleging that plaintiff does not have standing to bring its action by reason of plaintiff's failure to file an entry of appearance in the underlying administrative proceeding as required by the rules of the Commission. Def.'s Mot. to Dismiss and Mem. in Supp. of its Mot. to Dismiss ("Def. Br."), ECF No. 9. Plaintiff counters that it filed a questionnaire response containing factual information that led to the factual findings and legal conclusions being challenged in this action and that, as a result, plaintiff has established standing. Pl.'s Resp. in Opp'n to the Commission's Mot. to Dismiss ("Pl. Br."), ECF No. 19.

      For the reasons described below, the court grants defendant's motion to dismiss.

## BACKGROUND

The underlying administrative proceedings followed a petition by U.S. domestic producers of mattresses and unions representing workers in domestic mattress

factories for antidumping ("AD") and countervailing duty ("CVD") investigations. Def. Br. at 1-2; *Mattresses from Bosnia & Herzegovina, Bulgaria, Burma, Italy, Philippines, Poland, Slovenia, and Taiwan*, USITC Pub. 5520, Inv. Nos. 731-TA-1629-31, 1633, 1636-38, 1640, at 2 (June 2024). Petitioners alleged to both the U.S. Department of Commerce ("Commerce") and the Commission that "critical circumstances" existed regarding the importation of mattresses from Burma. Pl. Br. at 2. Critical circumstances exist where Commerce finds that "there have been massive imports of the subject merchandise over a relatively short period," 19 U.S.C. § 1673d(a)(3), and the Commission finds that those imports "are likely to undermine seriously the remedial effect of the antidumping duty order," *id.* § 1673d(b)(4)(A)(i). An affirmative finding of critical circumstances results in antidumping duties going into effect 90 days earlier than would be the case in the absence of critical circumstances — referred to as "retroactive application." *Id.* §§ 1673b(e)(1), 1673d(c)(4). In response to petitioners' allegations, several parties — not including plaintiff — argued that the record did not support an affirmative finding of critical circumstances in that the post-petition imports from Burma were not likely to undermine seriously the efficacy of the AD order. Pl. Br., Exs. 1-3.

　　　On July 28, 2023, the Commission instituted AD investigation No. 731-TA-1629-1640 and CVD investigation No. 701-TA-693, and on August 3, 2023, the Commission published notice of the investigations on the Federal Register. *Mattresses From Bosnia and Herzegovina, Bulgaria, Burma, India, Indonesia, Italy, Kosovo, Mexico, Philippines, Poland, Slovenia, Spain, and Taiwan; Institution of Anti-Dumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 88 Fed. Reg. 51,351 (ITC Aug. 3, 2023). On September 1, 2023, the Commission determined

preliminarily that "there is a reasonable indication that an industry in the United States is materially injured by reason of imports of mattresses" from the countries under investigation, including Burma, "that are alleged to be sold in the United States at less than fair value." *Mattresses from Bosnia & Herzegovina, Bulgaria, Burma, India, Indonesia, Italy, Kosovo, Mexico, Philippines, Poland, Slovenia, Spain, and Taiwan*, USITC Pub. 5460, Inv. Nos. 701-TA-693, 731-TA-1629-1640 (Sept. 2023). As a result, the Commission announced the commencement of the final phase of the investigation. *Id.* at 2; *see* 19 C.F.R. § 207.18.

On March 1, 2024, Commerce issued its affirmative preliminary determination of sales at less than fair value in the AD investigation. *Mattresses from Burma: Preliminary Affirmative Determination of Sales at Less than Fair Value and Preliminary Affirmative Determination of Critical Circumstances*, 89 Fed. Reg. 15,149 (Dep't of Commerce Mar. 1, 2024). Also in that preliminary determination, Commerce found that critical circumstances existed for mattresses from Burma.[1] *Id.* at 15,150.

On March 6, 2024, the Commission published on the Federal Register its notice of the "final phase of antidumping and countervailing duty investigation[s] . . . to

---

[1] Under 19 U.S.C. § 1673d(a)(3), in any AD investigation in which "the presence of critical circumstances has been alleged," if Commerce makes an affirmative determination of sales at less than fair value, the final determination "shall also contain a finding" of whether:

> (A)(i) there is a history of dumping and material injury by reason of dumped imports in the United States or elsewhere of the subject merchandise, or
> (ii) the person by whom, or for whose account, the merchandise was imported knew or should have known that the exporter was selling the subject merchandise at less than its fair value and that there would be material injury by reason of such sales, and
> (B) there have been massive imports of the subject merchandise over a relatively short period.

determine whether an industry in the United States is materially injured . . . by reason of imports of mattresses" from Burma, among other countries.[2] *Mattresses from Bosnia and Herzegovina, Bulgaria, Burma, India, Indonesia, Italy, Kosovo, Mexico, Philippines, Poland, Slovenia, Spain, and Taiwan; Scheduling of the Final Phase of Countervailing Duty and Antidumping Duty Investigations*, 89 Fed. Reg. 16,026 (ITC Mar. 6, 2024). In that notice, the Commission specified that "[p]ersons . . . wishing to participate in the final phase of these investigations as parties must file an entry of appearance with the Secretary to the Commission, as provided in § 201.11 of the Commission's rules, no later than 21 days prior to the hearing date specified in this notice." *Id.* at 16,026. The notice stated that the hearing would be held on May 9, 2024. *Id.* at 16,027.

Plaintiff is a U.S. importer of mattresses from Burma. Compl. ¶ 4. Plaintiff asserts in its complaint and in its briefing that during the Commission's investigation, plaintiff submitted to the Commission "importer questionnaire responses." Pl. Br. at 2; Compl. ¶ 4. Defendant submits as an exhibit to its reply brief a single U.S. importer questionnaire response that plaintiff completed and dated May 15, 2024. Def. Reply Br. at Ex. 1. At oral argument, plaintiff conceded that it limited its participation in the investigation to that single questionnaire response, and as defendant explains, plaintiff did not file an entry of appearance with the Commission during the investigation, as required by 19 C.F.R. § 201.11(a) to participate in Commission investigations. Oral Arg. Tr. at 6:15-21, ECF No. 30; Def. Br. at 2.

---

[2] The Commission issues its "Final Phase Notice of Scheduling" upon notice from Commerce of an affirmative preliminary determination. 19 C.F.R. § 207.21.

In June 2024, the Commission issued its final affirmative determinations of material injury. *Mattresses from Bosnia, Bulgaria, Burma, Italy, Philippines, Poland, Slovenia, and Taiwan*, USITC Pub. 5520, Inv. Nos. 731-TA-1629-1631, 1633, 1636-1638, and 1640 (June 2024). Like Commerce, the Commission found that critical circumstances existed for imports from Burma, with one Commissioner dissenting in that determination.[3] *Id.* at 3, 40.

Because Commerce and the Commission reached final affirmative determinations of critical circumstances, Commerce assessed retroactive AD duties on mattresses from Burma, to December 2, 2023, which was 90 days prior to the suspension of liquidation. *Mattresses from Bosnia and Herzegovina, Bulgaria, Burma, Italy, the Philippines, Poland, Slovenia, and Taiwan: Antidumping Duty Orders*, 89 Fed. Reg. 56,851 (Dep't of Commerce July 11, 2024) ("[R]etroactive duties will be applied to the relevant imports for a period of 90 days prior to the suspension of liquidation.").

On August 12, 2024, plaintiff commenced the instant action with its summons, and on September 11, 2024, plaintiff filed its complaint in which plaintiff alleged that the

---

[3] 19 U.S.C. § 1673d(b)(4)(A) provides the "Commission standard for retroactive application" and states that if Commerce makes an affirmative critical circumstances finding under § 1673d(a)(3), "then the final determination of the Commission shall include a finding as to whether the imports subject to the affirmative determination under subsection (a)(3) *are likely to undermine seriously the remedial effect of the antidumping duty order* to be issued under section 1673e" of title 19. (emphasis supplied). The statute requires that the Commission consider, "among other factors it considers relevant":

> (I) the timing and the volume of the imports,
> (II) a rapid increase in inventories of the imports, and
> (III) any other circumstances indicating that the remedial effect of the antidumping order will be seriously undermined.

*Id.* § 1673d(b)(4)(A)(ii).

Commission's final affirmative determination of critical circumstances is unsupported by substantial evidence and is not in accordance with law because, according to plaintiff, "[t]he Burmese import volume and inventories that underpinned the Commission's . . . determination could not seriously undermine the remedial effect of the *Antidumping Order* under 19 U.S.C. § 1673d(b)(4)(A)." Compl. ¶ 14.

On September 24, 2024, defendant filed its motion to dismiss for lack of subject matter jurisdiction. Def. Br. On March 27, 2025, the court held oral argument on defendant's motion to dismiss. Oral Arg., ECF No. 29.

## JURISDICTION AND STANDARD OF REVIEW

19 U.S.C. § 1516a(a)(2)(A)(i)(II) provides for judicial review of final affirmative critical circumstances determinations of the Commission under § 1673d. However, § 1516a(a)(2)(A) requires that a party seeking judicial review of such a determination be "an interested party who is a party to the proceeding in connection with which the matter arises" before the party may "commence [the] action . . . contesting any factual findings or legal conclusions upon which the determination is based."

In parallel, 28 U.S.C. § 2631 governs standing in suits before this Court and prescribes the "[p]ersons entitled to commence a civil action." Section 2631(c) states that a civil action contesting a determination listed in 19 U.S.C. § 1516a "may be commenced in the Court of International Trade by any interested party who was a party to the proceeding in connection with which the matter arose."

Rule 12(b)(1) provides that "a party may assert . . . by motion" the defense of "lack of subject-matter jurisdiction." USCIT R. 12(b)(1). "It is fundamental that the existence of a jurisdictional predicate is a threshold inquiry in which plaintiff bears the

burden of proof." *CR Indus. v. United States*, 10 CIT 561, 562 (1986). On a motion to dismiss for lack of subject matter jurisdiction, the Court assumes to be true the facts alleged in the complaint relevant to the jurisdictional inquiry. *Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002).

## DISCUSSION

**I.   Whether plaintiff has standing to bring the instant action**

   **A.   Legal framework**

Section 1516a(f)(3) states that "[t]he term 'interested party' means any person described in section 1677(9) of this title." *See also* 28 U.S.C. § 2631(k)(1) (same).

Section 1677(9)(A) in turn defines "interested party" as "a foreign manufacturer, producer, or exporter, or the United States importer, of subject merchandise or a trade or business association a majority of the members of which are producers, exporters, or importers of such merchandise."

The statute does not define the phrase "party to the proceeding." However, this Court and the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") have stated that, to satisfy the "party to the proceeding" requirement, a party's participation in the administrative proceeding "must reasonably convey the separate status of a party" and be "meaningful enough 'to put [the agency] on notice of a party's concerns.'" *Laclede Steel Co. v. United States*, No. 96-1029, 1996 WL 384010, at *2 (Fed. Cir. July 8, 1996) (first citing *Am. Grape Growers v. United States*, 9 CIT 103, 105, 604 F. Supp. 1245, 1249 (1985); then quoting *Encon Indus., Inc. v. United States*, 18 CIT 867, 868 (1994)).

19 C.F.R. § 201.11 governs the Commission's requirements for "[a]ppearance in an investigation as a party." Under § 201.11(a), "[a]ny person may apply to appear in an investigation as a party, either in person or by representative, by filing an entry of appearance with the Secretary."

**B.　Analysis**

The court examines whether plaintiff has standing to maintain its action. Defendant argues that plaintiff has failed to establish standing because plaintiff was not a "party to the proceeding" before the Commission by reason of plaintiff's failure to file an entry of appearance.[4] Def. Br. at 3. According to defendant, by declining to file an entry of appearance, plaintiff "failed to provide the requisite notification to the Commission of its intent to participate in the investigation as a party, and in fact, did not participate." *Id.* Defendant notes moreover that plaintiff "did not file any briefs, present testimony, or otherwise provide any arguments with respect to the Commission's injury investigation." *Id.*

Plaintiff responds that a plaintiff need not file an entry of appearance before the Commission to be considered a "party to the proceeding" under 28 U.S.C. § 2631(c). Pl. Br. at 1. Plaintiff asserts that by filing the questionnaire response plaintiff "reasonably conveyed itself as a separate entity which imports mattresses from Burma into the United States" and "adequately put the Commission 'on notice' to Plaintiff's concerns." *Id.* at 5. Plaintiff continues that through the submission of the questionnaire response plaintiff "implicitly indicated" to the Commission "its interests for reduced duty

---

[4] Defendant concedes that as a U.S. importer of the subject merchandise, plaintiff is an "interested party" as defined by 19 U.S.C. § 1677(9)(A). Def. Br. at 3.

rates for the subject merchandise that it itself imported." *Id.* (citing *Laclede Steel*, 1996 WL 384010, at *3).

The court concludes that plaintiff was not "a party to the proceeding in connection with which the matter arose." 28 U.S.C. § 2631(c). As a consequence, plaintiff does not have standing to bring the instant action to challenge the Commission's final affirmative determination of critical circumstances.

The statutory standing requirement that a party first be a "party to the proceeding" before the agency is a "low bar." *Gov't of Canada v. United States*, 48 CIT __, __, 686 F. Supp. 3d 1320, 1335 (2024); *see also Hor Liang Indus. Corp. v. United States*, 42 CIT __, __, 337 F. Supp. 3d 1310, 1318 (2018) (stating that the "party to the proceeding" requirement for standing "is not onerous"). "The participation requirement is obviously intended only to bar action by someone who did not take the opportunity to further its interests on the administrative level." *Am. Grape Growers*, 9 CIT at 105-06, 604 F. Supp. at 1249. This Court and the Federal Circuit have interpreted "party to the proceeding" as requiring any form of participation that "reasonably convey[s] the separate status of a party," and that was "meaningful enough 'to put [the agency] on notice'" of a party's concerns. *Laclede Steel*, 1996 WL 384010, at *2 (first citing *Am. Grape Growers*, 9 CIT at 105, 604 F. Supp. at 1249; and then quoting *Encon*, 18 CIT at 868); *see also Specialty Merch. Corp. v. United States*, 31 CIT 364, 365, 477 F. Supp. 2d 1359, 1361 (2007).

During the Commission investigation, plaintiff limited its participation to responding to a single questionnaire — the same questionnaire to which 80 total U.S.

importers of the subject merchandise responded.[5] That questionnaire informed plaintiff that a response was "mandatory" and that "failure to reply as directed can result in a subpoena or other order to compel the submission of records or information in [a party's] possession."  Def. Reply Br., Ex. 1 at 1 (citing 19 U.S.C. § 1333(a) (granting to the Commission subpoena power)).  The court does not consider an importer that failed to participate in a Commission investigation beyond responding to a mandatory questionnaire — and that failed even to clear the unquestionably low bar of filing an entry of appearance in proceedings before the Commission — to have "take[n] the opportunity to further its interests on the administrative level," *Am. Grape Growers*, 9 CIT at 105-06, 604 F. Supp. at 1249, or provided the Commission "with notice of [the importer's] concerns."  *Specialty Merch. Corp.*, 31 CIT at 365, 477 F. Supp. 2d at 1361; *see also Matsushita Elec. Indus. Co. v. United States*, 2 CIT 254, 258, 529 F. Supp. 664, 668 (1981) ("[T]he Court is not at liberty to give the term 'party' an expansive meaning, even if it were to deemphasize the I.T.C. rule which defines a party as one who has entered an appearance, a requirement which the three unions did not satisfy.").  For that reason, plaintiff does not have standing to bring the instant action.

Moreover, 19 U.S.C. § 1335 grants to the Commission the authority to "adopt such reasonable procedures and rules and regulations as it deems necessary to carry

---

[5] In fact, as the Commission describes in its motion to dismiss, the Commission's practice in fulfilling its obligation to determine material injury and, in this case, critical circumstances, is to issue questionnaires to "all relevant market participants," including "all U.S. producers, all importers of the product in question, all producers from the subject countries, and all significant purchasers of the product."  Def. Br. at 7.  During the instant investigation, five of the 80 U.S. importers filed entries of appearance, *id.* at 8, and several parties to the proceeding submitted briefing arguing that the record did not support a finding of critical circumstances with respect to mattresses from Burma. *See* Pl. Br. at Exs. 1-3.

out its functions and duties." And, as this case illustrates, the Commission requires for good reason that an interested party that wishes to participate as a party to the proceeding file an entry of appearance. For example, of the dozens of market participants that submit questionnaire responses to the Commission, only "part[ies] to the investigation" — e.g., parties that have filed entries of appearance — are permitted access to business proprietary information under the administrative protective order. 19 C.F.R. § 207.7(a)(3). Similarly, only "part[ies] to the investigation" are included on the Commission's service list under § 201.11(a) and required to effect service on other parties to the investigation of "[e]ach document filed with . . . the Commission." *Id.* § 201.16(b), (c)(1). In the instant case, plaintiff filed its questionnaire response on May 15, 2024, but other interested parties did not receive plaintiff's submission until June 4 — after the Commission had closed the administrative record — because plaintiff was not a "party to the investigation." Accordingly, the requirement of 19 C.F.R. § 201.11(a) that an interested party file an entry of appearance to qualify as a party to the proceeding in a Commission investigation is — at the very least — a "reasonable . . . regulation[]" to aid the Commission in "carry[ing] out its functions and duties." 19 U.S.C. § 1335.

      Plaintiff relies on decisions of this Court and the Federal Circuit in which the court concluded that a party that filed with the agency factual information qualified as a "party to the proceeding." *See* Pl. Br. at 5-7 (citing *Laclede Steel*, 1996 WL 384010, at *3; *Gov't of Canada*, 48 CIT at __, 686 F. Supp. 3d at 1327). Plaintiff's reliance on these decisions is not persuasive.

For example, in *Laclede Steel* the Federal Circuit concluded that two Korean producers of the subject merchandise were "parties to the proceeding" for purposes of intervention as of right under 28 U.S.C. § 2631(j)(1)(B).[6] 1996 WL 384010, at *1-2. However, in that case the Federal Circuit noted first that the two Korean producers had "file[d] appearances in, and appear[ed] to be represented by counsel throughout, the antidumping investigation," a threshold that plaintiff in the instant case did not pass. *Id.* at *2. In addition, the Federal Circuit commented on the nature of the factual information that made Commerce "aware of intervenors' interests in the investigation." *Id.* Specifically, the intervenors in *Laclede Steel* "submitted factual data on exports to assist Commerce in the selection of mandatory respondents," in which the intervenors "corresponded with Commerce requesting exclusion as mandatory respondents, thereby impliedly indicating [the intervenors'] willingness to accept an 'all others' rate." *Id.* For those reasons, the Federal Circuit determined that the "intervenors took the steps they deemed necessary to further their interests at the administrative level." *Id.*

In *Government of Canada*, this Court was presented with circumstances highly distinct from the circumstances in the instant case. There, the Court held that importers and foreign producers/exporters that filed requests for administrative review were "parties to the proceeding" before Commerce and therefore were entitled to intervene as of right under § 2631(j)(1)(B). *Gov't of Canada*, 48 CIT at __, 686 F. Supp. 3d at 1324-25. The Court noted that intervenors had filed also entries of appearance in the administrative review and applications for administrative protective orders. *Id.* at __,

---

[6] The "party to the proceeding" requirement applies both to standing to maintain an action as a plaintiff and also to intervene as of right in actions under 19 U.S.C. § 1516a. *Compare* 28 U.S.C. § 2631(c), *with* 28 U.S.C. § 2631(j)(1)(B).

686 F. Supp. 3d at 1324.  The Court observed in addition that defendant's opposition to intervention "contradict[ed] decades of Commerce's practice regarding intervention as a matter of right for non-selected respondents."  *Id.* at __, 686 F. Supp. 3d at 1329.  The Court described the effect of the requests for administrative review:

> By requesting administrative reviews of themselves in the antidumping duty proceeding in this case, the Proposed Plaintiff-Intervenors put Commerce on notice of: 1) their disagreement with the existing dumping margins and the cash deposit rates paid during the period of review; 2) their interest in obtaining a more favorable margin rate; 3) their willingness to provide more information if selected by Commerce for administrative review (or be subjected to adverse facts for not cooperating); and 4) information that assisted Commerce in its selection of mandatory respondents.

*Id.*

The Court concluded for those reasons that intervenors "met the statutory requirement for standing as parties to the proceeding by participation that reasonably provided Commerce with notice of the Parties' concerns."  *Id.* at __, 686 F. Supp. 3d at 1329-30.  By contrast to the participation described in *Laclede Steel* and *Government of Canada*, the instant plaintiff's single mandatory questionnaire response could not have reasonably communicated to the Commission — even implicitly — notice of plaintiff's concerns.  *See Encon*, 18 CIT at 868 ("The court is inclined to view the participation requirement as intending meaningful participation, that is, action which would put Commerce on notice of a party's concerns."); *Hor Liang Indus. Corp.*, 42 CIT at __, 337 F. Supp. 3d at 1315, 1320 (holding that parties that filed notices of appearance and ministerial error comments had "notified Commerce of their concerns about the agency's calculation of the all-others rate and sought to advance their interests on the administrative level").

In sum, the court concludes that plaintiff was not "a party to the proceeding in connection with which the matter arose." 28 U.S.C. § 2631(c). As a result, plaintiff does not have standing to maintain its action to challenge the Commission's final affirmative determination of critical circumstances.

## CONCLUSION

For the reasons described above, it is hereby

**ORDERED** that defendant's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**. Judgment will enter accordingly.

/s/     Timothy M. Reif
Timothy M. Reif, Judge

Dated:     April 22, 2025
           New York, New York